I.
This appeal arises in a familiar context. The owner of a construction project defaults and the construction lender and materialmen scramble to minimize their losses. Today we are asked to decide whether such a construction lender owes, in favor of one holding an unperfected materialman's lien, a duty of reasonable diligence in disbursing to an owner proceeds of a construction loan, such that the materialman might recover for losses proximately caused thereby. We hold that the construction lender has no such duty, nor has the unperfected materialman any such correlative right.
The Circuit Court dismissed the materialman's suit. We affirm.
 II. A.
The cast of characters in this civil action includes:
(1) Gene Allen Popetz, Sr., is an adult resident citizen of Itawamba County, Mississippi. At all times relevant hereto Popetz and his wife Bonnie owned certain real property located in the southwest quarter of Section 33, Township 9 South, Range 8 East, Itawamba County, Mississippi, upon which they were building a home. The *Page 507 
Popetzes are not per se parties to this action.
(2) First Citizens National Bank is a banking association organized, chartered and existing under the laws of the United States, having its principal place of business and domicile in Tupelo, Lee County, Mississippi. First Citizens is the construction lender involved in this case and is sometimes hereafter referred to as "construction lender". First Citizens was the Defendant below and is the Appellee here.
(3) Riley Building Supplies, Inc. is a corporation organized and existing under the laws of the state of Mississippi, with its principal place of business in Fulton, Itawamba County, Mississippi. Riley furnished materials and supplies that went into the construction of the Popetzes' home and, accordingly, is a materialman and is sometimes hereinafter referred to as such. Riley was the Plaintiff below and is the Appellant here.
Prior to August of 1981, Gene and Bonnie Popetz owned the tract of real property referred to above.[1] In August of 1981 the Popetzes began construction of a personal residence on that property. On September 4, 1981, they made application to First Citizens for a construction loan to finance the building of their home. This loan was approved and a secured transaction was entered wherein the Popetzes gave to First Citizens a deed of trust covering the property and the home being constructed. First Citizens had approved construction financing in the amount of $35,000.00, but in fact only $30,000.00 was used.
During the course of the construction, the Popetzes purchased certain building supplies from Riley. These supplies were used in the construction of the residence in question. The purchases were made from Riley on an open account basis. At no time has Riley filed with the chancery clerk a notice of construction lien, nor has Riley in any other way perfected any lien against the property. In the end the Popetzes owed Riley $4,496.95 on open account for materials supplied by Riley and used by the Popetzes in connection with construction of the residence in question.
On October 7, 1981, First Citizens entered into a permanent loan arrangement with the Popetzes and took and recorded a deed of trust in connection therewith.
On October 28, 1981, Popetz filed a petition in bankruptcy in the United States District Court for the Northern District of Mississippi and he has thereupon been adjudged a bankrupt. SeeIn Re Popetz, No. EBK 81-10,543 (N.D.Miss. 1981). Immediately prior to the filing of this bankruptcy petition, insofar as the record appears, First Citizens was a secured creditor, holding a perfected security interest or deed of trust in and to the real property in question. Riley, on the other hand, was and is an unsecured creditor, having never taken any steps to perfect its lien, if any, against the property. Riley has never been paid any portion of its $4,496.95 open account. Presumably Popetz' obligation to pay this sum has been discharged in bankruptcy, his discharge order having been entered on March 22, 1982. The record does not reflect the outcome of First Citizens' secured transaction.
 B.
On July 7, 1983, Riley Building Supplies, Inc. commenced the present civil action by filing its complaint in the Circuit Court of Itawamba County, Mississippi. First Citizens National Bank was named as the sole defendant. Riley charged in substance the facts set forth above and alleged that First Citizens, as a construction lender, had a duty to materialmen, specifically including Riley, to use reasonable diligence to assure that construction loan funds actually advanced were in fact used in payment for materials and other costs of construction. The complaint further alleged that Popetz used the construction funds for other purposes and, more specifically, that First Citizens breached its alleged duty in that it negligently failed to take reasonable steps to assure that funds advanced were actually *Page 508 
used to pay materialmen such as Riley. Riley claimed that as the result of First Citizens' negligence, it had suffered a loss of $4,496.95 for which sum it demanded judgment.
The matter came before the Circuit Court upon Riley's motion for summary judgment and upon stipulated facts. The parties agreed that the outcome determinative question was one of law: whether First Citizens "owes a duty to exercise reasonable diligence to assure that loan proceeds and advances are paid to materialmen and subcontractors," such that breach gives rise to a right of action. On October 19, 1984, the Circuit Court entered an opinion and order holding, inter alia, that Riley had no independent right against First Citizens as alleged in the premises. Judgment was entered in favor of First Citizens and against Riley, who now appeals.
 III.
Riley seeks aid and comfort for its claim in a series of opinions of this Court beginning with Southern Life InsuranceCo. v. Pollard Appliance Co., 247 Miss. 211, 221, 150 So.2d 416
(1963) extending through and including Peoples Bank Trust Co.v. L T Developers, 434 So.2d 699, 705-08 (Miss. 1983); seealso Deposit Guaranty National Bank v. E.Q. Smith Plumbing Heating, Inc., 392 So.2d 208, 212 (Miss. 1980) clarified396 So.2d 6 (Miss. 1981); Guaranty Mortgage Co. of Nashville v.Seitz, 367 So.2d 438, 441 (Miss. 1979); and First National Bankof Greenville v. Virden, 208 Miss. 679, 685, 45 So.2d 268, 270 (1950). Those cases do indeed contain language to the effect that "the construction lender must show that it has used reasonable diligence to see that these [construction loan] funds were actually used in payment for labor, materials or other costs of construction." Peoples Bank, 434 So.2d at 707.
The context in which these statements were made is important. Each case involved a competition between two parties holding security interests of equal rank, that is, between two parties each of whom had a perfected lien against the property under construction. One such party generally was a construction lender holding a deed of trust, perfected prior in time. The other such party, customarily, was a materialman or other similar party holding a construction lien perfected subsequent in time to the construction lender's deed of trust. Invariably, the owner had taken the construction loan proceeds, intended for payment of materialmen, laborers, and other like parties, and had applied those funds to other pockets. The question for decision in each such case concerned the priority of the two perfected liens, again, each case arising in the context of the collateral being insufficient to pay in full all secured debts.
In each of those cases we upheld the construction lender's first in time priority but with a limitation. We limited that priority to the dollar amount of the construction lender's secured claim and perfected lien which represented (a) the amount of construction loan proceeds which were used to purchase goods, supplies or services which actually went into the construction project or (b) the extent that the construction lender had used reasonable diligence in disbursing the funds to see that they were used in connection with the construction project. Conversely, if the construction lender's funds did not go into the construction project and if the construction lender had not used due diligence in the premises, the construction lender was held to have forfeited its priority vis-a-vis the materialman's perfected lien. But this would not affect the perfected status of the construction lender's deed of trust, only its priority position.
We need add flesh to the point. There is no natural law of materialman's liens. The law governing the subject is the product of enactments of the Mississippi Legislature. See Miss. Code Ann. § 85-7-131 (Supp. 1986). Parties such as Riley hold a lien against property only to the extent that they have brought themselves within the terms of the statute. See Jones Supply Co.v. Ishee, 249 Miss. 515, 521-22, 163 So.2d 470, 475 (1964).
The statute in question, Section 85-7-131, provides: *Page 509 
 Every house, building, . . . or structure of any kind . . . shall be liable for the debt contracted and owing, for labor done or materials furnished . . . about the erection, construction, alteration or repairs thereof; and debt for such services or construction shall be a lien thereon.
Stating the matter in the converse, Section 85-7-131 then provides:
 The . . . laborers and materialman and/or contractors who rendered services and constructed the improvements shall have a lien therefor.
The statute then discusses the questions of perfection and priority.
 Such lien shall take effect as to purchasers or encumbrancers for a valuable consideration without notice thereof, only from the time of commencing suit to enforce the lien, or from the time of filing the contract under which the lien arose, or notice thereof, in the office of the clerk of the chancery court, . . . .
Riley has never taken any of the alternative steps available for perfection of its lien. Accordingly, vis-a-vis encumbrancers for valuable consideration without notice, Riley has wholly subordinate rights. See Peoples Bank, 434 So.2d at 706-07.
The rule announced in the line of cases culminating withPeoples Bank is based upon equitable considerations. It arises in the context of competing claims to property between two secured parties holding security interests of equal rank, that is, each having perfected liens. Because the property is of insufficient value to satisfy both, the question becomes one of priority. The first-in-time, first-in-right rule is tempered by the equities so that the construction lender with the prior perfected claim loses his priority — but not his perfected lien — the extent that he has failed to exercise reasonable diligence to see that his loan funds went into the construction project.
But there is no reason on principle why all of this should be so where the materialman has also failed in the area of diligence. Here Riley has failed to take the action which would have elevated his lien to the perfected state, the state of equal rank with First Citizens' perfected lien. The perfection procedure is available under Section 85-7-141 and for reasons not disclosed in the record, Riley has failed to take advantage of it. He, therefore, holds a subordinate lien and the PeoplesBank priority question is never reached.
Riley has taken the somewhat novel approach of claiming that it has a tort action against First Citizens. Rather than contesting regarding the property or its proceeds in a lien priority action or, as here, before the bankruptcy court, Riley muses that it has independent rights. Since those rights cannot be found in our law of property nor are they created by any consensual arrangement between the parties, Riley reasons that its claim exists in tort.
We eschew any idea that Riley's claim must fail because it has not jumped through the procedurally familiar hoop of a suit against the property or a lien priority contest in state court or in bankruptcy court. The net effect of what Riley attempts is the same as if it had pursued the more familiar course. Conversely, when we convert this action to the familiar one, we find that Riley must fail because it has not brought its lien to a state of equal rank with First Citizens'. In the familiar setting, Riley would not profit from First Citizens' lack of due diligence, if any there has been, for Riley itself has failed of due diligence in its failure to get its lien perfected. In the present setting, Riley fails as well.
Riley argues that it was effectively enjoined from taking any action to perfect its lien by the familiar automatic stay incident to Popetz filing of his petition in bankruptcy. We do not understand that stay, however, to prohibit a party such as Riley from filing the notice of its materialman's lien under Section 85-7-131. Contrary to Riley's assertion, Section 362(b)(3) of the Bankruptcy Act, 11 U.S.C. § 362(b)(3), specifically exempts from operation of the stay ". . . any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to . . . § 546(b) of this title."See, e.g., Home Building Mart, Inc. v. Parker, 370 So.2d 916
(Miss. 1979) (materialmen filed their notices of construction *Page 510 
liens after the petition in bankruptcy had been filed by the owner). Furthermore, there is precedent for a party such as Riley obtaining a lifting of the bankruptcy stay to permit it to enforce its materialman's lien. See, e.g., Houts v. MeekLumberyard, Inc., 23 B.R. 705 (W.D.Mo. 1982). Riley took no such steps.
The judgment of the Circuit Court is affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
PRATHER, J., not participating.
[1] The record before us is quite sketchy. We have devined the facts as best we could. Suffice it to say that we do not understand the parties to dispute any material facts.