# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-CA-00762-COA

**AMERIHOST DEVELOPMENT, INC.**                                         **APPELLANT**

**v.**

**BROMANCO, INC.; K & K BATHTUB REPAIR; DIAMOND DOOR GROUP, INC.; DEER PARK FENCE & INSULATION CO.; GREY PLUMBING, INC.; S & L CREATIVE CARPET; VICKSBURG PAINT & GLASS COMPANY; PRECISION ROOF SERVICES, INC.; VINZANT CONSTRUCTION; CONTROLLED AIR COMFORT COMPANY; SOUTHERN ELECTRIC SUPPLY COMPANY, INC.; WRIGHT'S PAINTING; BRUCE COPES ELECTRICAL, INC.; METROPOLIS BUILDERS SUPPLY; PARADISE POOLS & SPAS; BARRY LANDSCAPE, INC.; UNITED PIPING, INC.; UPTON PLASTERING; MID- SOUTH LUMBER & SUPPLY, INC.; W. J. RUNYON & SON, INC.; TESA/ENTRY SYSTEMS, INC. AND GEE & STRICKLAND, INC.**                                         **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 4/15/1998 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHIL B. ABERNETHY |
| | JEFFREY TODD WAYCASTER |
| | RICHARD M. DYE |
| ATTORNEYS FOR APPELLEES: | PHIL B. ABERNETHY |
| | ROBERT R. BAILESS |
| | CHARLES L. BALCH III |
| | JAMES L. PENLEY JR. |
| | LUCIUS B. DABNEY JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | CASINO HELD LIABLE TO SUBCONTRACTOR FOR AMOUNTS PAID TO GENERAL CONTRACTOR FOLLOWING STOP PAYMENT NOTICE GIVEN BY SUBCONTRACTOR |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART AND REVERSED AND RENDERED IN PART - 02/08/2000 |
| MOTION FOR REHEARING FILED: | 2/22/2000; denied 6/20/2000 |
| CERTIORARI FILED: | 7/5/2000; granted 9/28/2000 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.

THOMAS, J., FOR THE COURT:

¶1. Amerihost Development, Inc. appeals the judgment of the Circuit Court of Warren County, raising the following assignments as error:

**I. WHETHER A SINGLE STOP PAYMENT NOTICE EXERCISING THE RIGHTS OF ONE SUBCONTRACTOR PURSUANT MISS. CODE ANN. § 85-7-181 CONFERS THE BENEFITS AND PROTECTIONS OF SAID STATUTE UPON ALL SUBCONTRACTORS AND SUPPLIERS REGARDLESS OF WHETHER EACH SUBCONTRACTOR OR SUPPLIER INDIVIDUALLY PROVIDED NOTICE OF THEIR RESPECTIVE CLAIMS.**

**II. WHETHER THE TRIAL COURT ERRED IN AWARDING PRE AND POST-JUDGMENT INTEREST OF FUNDS INTERPLED AND ON DEPOSIT WITH THE COURT CLERK.**

**III. WHETHER THE TRIAL COURT ERRED IN ITS AWARD OF ATTORNEYS' FEES.**

¶2. Bruce Copes Electric, Inc., on cross-appeal, appeals the judgment of the Circuit Court of Warren County and raises the following assignment as error:

**IV. WHETHER THE TRIAL COURT ERRED IN FINDING THAT BRUCE COPES ELECTRIC, INC. WAS NOT ENTITLED TO ANY OF THE FUNDS INTERPLED.**

¶3. As to the appeal of Amerihost Development, Inc., finding reversible error, we reverse and render in part and reverse and remand in part. As to the cross-appeal of Bruce Copes Electric, Inc., finding no error, we affirm.

## FACTS

¶4. Amerihost Development, Inc., an Illinois corporation licensed to operate in Mississippi, is the owner and developer of a construction project known as Days Inn, Rainbow Park, in Vicksburg, Mississippi. On July 25, 1994, Amerihost entered into a construction contract with the Ohio corporation Bromanco, as general contractor of the hotel project. The original lump sum contracted price of the project was $1,971,977. However, as the project progressed change orders increased the original contracted price to a new total of $2,011,082.83. Amerihost solely financed the project; therefore, no construction lender was involved. Amerihost made irregular inspections of the project site through its personnel, but nevertheless trusted and relied heavily on Bromanco's expertise as the general contractor. The contract specified that periodic progress payments would be made to Bromanco as the project progressed minus a ten percent retainage. The contract required that Bromanco submit periodic applications for payment with stated completion percentages and the appropriate lien waivers prior to Amerihost's remittance of payment. A total of eight progress payments were made to Bromanco between October 13, 1994 and April 30, 1995. Initially

Bromanco provided the appropriate applications and the project progressed without any apparent problems of major significance. However, as the project neared completion Bromanco began to submit applications for payment without complete lien waivers and in fact submitted some duplicate lien waivers. Yet, no stop notices were sent during this period to Amerihost by any subcontractors, materialmen, or suppliers until mid April 1995.

¶5. On April 17, 1995 Amerihost received a statutory stop payment notice pursuant to Miss. Code Ann. § 85-7-181 (1972) in the amount of $25,000 from Wright's Painting Company, one of the subcontractors hired by Bromanco. The dispute between Wright, Amerihost, and Bromanco was subsequently resolved without Wright having ever participated in the instant action. On April 30, 1995, Bromanco submitted its last application for payment on the project in the amount of $272,819.13. On May 5, 1995, Amerihost received a notice letter from Southern Electric Supply Company informing Amerihost that they had not been paid approximately $30,881.56 by Bromanco and that said letter should be considered Southern's notice under applicable state statutes and a demand for immediate payment. The two stop payment notices received from Wright's Painting and Southern Electric totaled approximately $55,881.56. On May 15, 1995, Amerihost paid Bromanco the $272,819.13 requested on April 30, 1995, but Amerihost still retained approximately $110,330.20. Despite that the project was substantially complete, Bromanco nevertheless defaulted as general contractor and failed to complete the project. As a result Amerihost hired its own work force to finish the project and expended approximately $19,844.62 of the retainage to complete the project leaving a retainage of $90,485.58.

¶6. Between May 15, 1995 and November 15, 1995, Amerihost received numerous stop payment notices and/or bills of account from several of the subcontractors and materialmen originally hired by Bromanco to work on the project. Consequently, on November 15, 1995, Amerihost interpled the remaining retainage of $90,485.58 into the registry of the Warren County Circuit Court.

## ANALYSIS

### I.

**WHETHER A SINGLE STOP PAYMENT NOTICE EXERCISING THE RIGHTS OF ONE SUBCONTRACTOR PURSUANT MISS. CODE ANN. § 85-7-181 CONFERS THE BENEFITS AND PROTECTIONS OF SAID STATUTE UPON ALL SUBCONTRACTORS AND SUPPLIERS REGARDLESS OF WHETHER EACH SUBCONTRACTOR OR SUPPLIER INDIVIDUALLY PROVIDED NOTICE OF THEIR RESPECTIVE CLAIMS.**

¶7. Amerihost argues that the trial court erred in its interpretation of Miss Code Ann. § 85-7-181. In reaching its decision, the trial court interpreted § 85-7-181 as conferring the rights stated within that statute upon all subcontractors, materialmen and suppliers who had worked on the project despite whether each had availed themselves individually of the express terms of that statute's notice requirements once the owner is in receipt of at least one notice from anyone of them. This interpretation does not take into account that the lone notice merely asserts that individual subcontractor's amount in controversy and is silent with respect to the individual claims, if any, of the other subcontractors, materialmen, and suppliers. Particularly, in this case two individual notices, each asserting its own distinct claims and nothing more, were sent by separate subcontractors and suppliers: Wright's Painting on April 17, 1995 and Southern Electric Supply on May 5, 1995. Both notices contained sufficient information under the stop notice statute, § 85-7-181, to qualify as notices under that statute. We quickly note that Southern Electric Supply was initially a supplier of a

subcontractor, Copes Electric, rather than a supplier of the general contractor, Bromanco, and therefore not entitled to the protections of § 85-7-181. Material suppliers are general creditors in the absence of the afforded protections of § 85-7-181 covering subcontractors or materialmen of the general or prime contractor as subcontractors or materialmen to another subcontractor are not covered within the section. *Associated Dealers Supply, Inc. v. Mississippi Roofing Supply, Inc.*, 589 So. 2d 1245, 1247 (Miss. 1991). However, by virtue of a joint payment agreement entered into on February 8, 1995 between Southern, Bromanco, and Copes Electric, wherein Bromanco gave assurances that future payments for materials would be made jointly between Southern and Copes Electric, Southern was elevated from a supplier of a subcontractor to a supplier of the general contractor. Southern's elevated status, however, does not afford them the protections contained in § 85-7-181 for materials supplied and expenses incurred prior to the February 8, 1995 agreement.

¶8. The trial court concluded, with regard to the first notice received on April 17, 1995, that once an owner/developer is presented with a single statutory stop payment notice by one subcontractor then that lone notice places the owner/developer on notice that something is potentially afoul with the entire project; therefore, all funds due the general contractor at the time the notice is received must be bound in the hands of the owner until the matter is resolved. Amerihost argues that under the trial court's interpretation those subcontractors, materialmen and suppliers who failed to adhere to the express terms of the statute are nevertheless allowed to unjustly piggyback on the lone stop payment notice submitted by Wright. Amerihost asserts that this interpretation not only is contrary to the intended purpose of the statute as supported within the statute's express language but is also contrary and counter to public policy considerations affecting the construction industry in Mississippi.

¶9. Mississippi Code Annotated § 85-7-181 (1972) is as follows:

When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration, or repair of any house, building, structure, fixture, boat, water craft, railroad, railroad embankment, the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, any such person, subcontractor, journeyman or laborer may give notice in writing to the owner thereof of the amount due him and claim the benefit of this section; and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman, shall be bound in the hands of such owner for the payment in full, or if insufficient then pro rata, of all sums due such person, subcontractor, journeyman or laborer who might lawfully have given notice in writing to the owner hereunder, and if after such notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court, the amount due on the contract; and thereupon all persons entitled hereunder, so far as known, shall be made parties and summoned into court to protect their rights, contest the demands of such contractor or master workman and other claimants; and the court shall cause an issue to be made up and tried and direct the payment of the amount found due in accordance with the provisions hereof; or in case any person entitled to the benefits hereof, shall sue the contractor or master workman, such person so suing shall make the owner and all other persons interested, either as contractors, master workmen, subcontractors, laborers, journeymen or materialmen, so far as known, parties to the suit (and any such party not made a party in any suit hereunder authorized may intervene by petition), and, thereupon the owner may pay into the court the amount admitted to be due on the contract or sufficient to pay the sums claimed, and the court shall cause an issue to be made up and award the same to the person lawfully entitled; in either case the

owner shall not be liable for costs; but if the owner, when sued, with the contractor or master workman, shall deny any indebtedness sufficient to satisfy the sums claimed and all costs, the court shall, at the instance of any party interested, cause an issue to be made up to ascertain the true amount of such indebtedness and shall give judgment and award costs, and reasonable attorney's fees, according to the rights of the several parties in accordance herewith. In case judgment shall be given against such owner, such judgment shall be a lien, from the date of the original notice, and shall be enforced as other liens provided in this chapter. The owner shall not be liable in any event for a greater amount than the amount contracted for with the contractor.

The provisions of this section allowing the award of attorney's fees shall only apply to actions the cause of which accrued on or after July 1, 1987.

¶10. In arguing its interpretation of § 85-7-181, Bromanco, Inc. places great weight on the legislative history of the section, specifically the amendments to the 1906 Code by the 1918 Act. The present statute is essentially the same as that which was amended by the 1918 Act. Bromanco argues that with the language additions contained in the 1918 Act, so also came the legislative intent to broaden the statute's protections to include all members of the protected class of materialmen and subcontractors once a single notice is sent and received. Under Bromanco's interpretation, the first solitary notice asserting one member's individual right of lien is also for the benefit of all subcontractors, suppliers, and laborers who had the right to file a stop notice, but failed to actually file their respective notices.

¶11. First we note that Miss. Code Ann. § 85-7-181 is the product of statutory enactment dating to 1880 and is therefore open to statutory construction:

This particular statute was first passed in 1880. However, Mississippi had a mechanics' lien act as early as 1838. The lien under Sec. 372 is purely a creature of statute and did not exist at common law. In its absence materialmen and laborers would be only general creditors of the contractor. Although the statute should be construed liberally to effectuate its purposes, laborers and materialmen have no lien on the money owed by the owner to the contractor until they give the statutory stop notice to the owner. Two systems of liens have been adopted by statutes in various states for the protection of materialmen and laborers. One is known as the Pennsylvania system. It confers a direct and independent lien, irrespective of the rights of the principal contractor. The other system, called the New York system, which is that created by Section 372, confers a lien by subrogation to the rights of the independent contractor. The materialmen or laborers under such a statute are entitled to a lien only when the contractor is entitled to one, and there is something due or to become due to the principal contractor from the owner.

*Chancellor v. Melvin*, 211 Miss. 590, 599, 52 So. 2d 360, 364-65 (1951) (citations omitted).

¶12. While the current statutory construction is open to differing interpretations, we do have at our disposal another rule of statutory construction which may be used by this Court in our efforts to ascertain the intent of the legislature and the meaning of the statute before us today. When the necessity for construction arises:

It is generally regarded as permissible to consider the consequences of a proposed interpretation of a statute, where the act is ambiguous in terms and fairly susceptible of two constructions. Under such circumstances, it is presumed that undesirable consequences were not intended; to the contrary, it is presumed that the statute was intended to have the most beneficial operation that the language

permits. It is accordingly a reasonable and safe rule of construction to resolve any ambiguity in a statute in favor of a beneficial operation of the law, and a construction of which the statute is fairly susceptible is favored, which will avoid all objectionable, mischievous, indefensible, wrongful, evil, and injurious consequences.

73 AM JUR. § 258 page 427-28 (1974); *See Dawson v. Townsend & Sons, Inc*., 735 So. 2d 1131 (¶37) (Miss. Ct. App. 1999) (holding that when a statute is ambiguous and subject to multiple interpretations, courts need to understand the possible effects in order not to interpret the statute in such a way as to cause absurd results); *Chandler v. City of Jackson Civil Service Comm'n*, 687 So. 2d 142, 144-45 (Miss. 1997) (holding that when construing a statute, all possible repercussions and consequences of construction should be considered); *Evans v. Boyle Flying Serv., Inc.*, 680 So. 2d 821, 825-26 (Miss. 1996) (holding that in construing statutes, unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to legislature when reasonable construction is possible); *Allred v. Webb*, 641 So. 2d 1218, 1222 (Miss. 1994) (holding that when no valid reason exists for one of two possible constructions of statute, interpretation with no valid reason ought not be adopted); *McCaffrey's Food Mkt., Inc. v. Mississippi Milk Comm'n*, 227 So. 2d 459, 465 (Miss. 1969) (holding that the statutory construction which is most beneficial and which will avoid objectionable consequences will be adopted).

¶13. We quickly note that under Bromanco's argument and submitted interpretation, owners who have hired a general contractor to ensure the actual construction of the project would suddenly have themselves vaulted into the shoes of the general contractor regardless of whether they have the expertise to complete the project once a single stop payment notice is received. This would circumvent the precise reason that general contractors are hired. Owners would be left with the arduous task of obtaining information on the current work performed, the supplies and materials provided and those current amounts due to the various subcontractors, materialmen and suppliers.

¶14. In addressing the nature of the relationship between a Amerihost and Bromanco, the trial court held that Amerihost negligently or wilfully failed to follow the funds into the project and that such failure proximately caused the losses claimed by the subcontractors and materialmen. The trial court concluded that Amerihost, as both owner and lender, was liable for all unpaid subcontractor's claims, even if such subcontractor's claims exceeded the contract amount due to its failure to properly monitor the progress of the work and payments to Bromanco as applied under the holding reached in *First National Bank of Greenville v. Virden*, 208 Miss. 679, 45 So. 2d 268 (1950). *Virden* is, however, distinguishable from the case before us today. The *Virden* case was decided on the context of mortgage law when an issue of preference arises between competing liens: a deed of trust on the project held by a bank or mortgagee on advances made under a previously executed mortgage and a mechanic's or materialmen's lien on materials and labor supplied on the project. *Virden*, 208 Miss. at 685, 45 So. 2d at 270. In *Virden*, the supreme court held that where a bank accepts a deed of trust on property from the contractor and advances proceeds to the contractor for housing lots and materials to be used in the construction of houses, but failed to see that the funds were actually going into the housing construction and merely remitted loan proceeds as the contractor requested them, then the bank's lien was only superior to liens of materialmen to the extend that the loan proceeds actually went into the project. *Id*.

¶15. However, in the case *sub judice* we are faced with deciding an issue not from a mortgage standpoint and the resulting priorities of liens between a mortgagee and a materialman, as the Amerihost project was

privately funded, but rather from that of mechanics' lien law as was addressed in *Engle Accoustic & Tile, Inc. v. Grenfell*, 223 So. 2d 613 (Miss. 1969). While *Engle* may not fall squarely on all fours, it does however have sufficient analysis to afford us the appropriate avenue to aid us in our decision. In *Engle*, suit was brought by several subcontractors against the project's owners and architect for balances due them as a result of the prime contractor's default. The owners, Dr.s Melvin, Marland, and Grenfell, entered into a contract with Fran Builders, a partnership composed of Guy Lowe, Jr. and Hudson Turner, the prime contractor, on November 23, 1965 for the construction of a multistory office building in Jackson, Mississippi. The construction contract was on a cost plus fixed percentage basis without a performance bond. Various subcontractors and materialmen were employed by Fran to work on the project and supply building materials. As the project progressed, Fran made nine applications for payment for labor and materials furnished. Each application was submitted to the owner's architect for verification before payment was remitted. In late August 1966, it became apparent that Fran had not paid all laborers and materialmen involved in the project and work ceased shortly thereafter. Fran was later declared bankrupt. None of the laborers or materialmen filed a stop payment notice on their claims until after the owners had paid Fran in full under its ninth and last application for payment.

¶16. The Mississippi Supreme Court, in reaching a favorable decision for the owners, acknowledged the difficult consequences resulting from its decision: "[I]t is regrettably true that either the appellants will lose their labor and materials in the amounts stated or the Owners will be forced to make a double payment. It does not necessarily follow, however, that the Owners were in the best position to have prevented the loss."*Engle*, 223 So. 2d at 618. As was the case in Amerihost, the owners in *Engle*, initiated the overall project and trusted and relied heavily upon their prime contractor to complete the contracted project without any difficulties or problems. The *Engle* court further acknowledged that the subcontractors and materialmen also relied on and trusted Fran, but their reliance and trust were as equally misguided and displaced as were that of the owners. However, in ultimately deciding which party, the owners or the laborers and materialmen, were in the best position to prevent the resulting losses, the Mississippi Supreme Court held that none of the subcontractors or materialmen had availed themselves of a specific remedy afforded them by statute, specifically Miss. Code 1942 Ann. § 372 (1956). *Id*. The court went on to hold that so long as advance payments to the prime contractor by the owners, whether "intentional or unintentional," extinguish debt and are paid prior to receipt of the statutory stop payment notices, liability is precluded on the part of the owners. *Id*. at 619.

¶17. As was the basis for the supreme court's holding in *Engle*, subcontractors and materialmen are not left without recourse under the current statutory construction of § 85-7-181 provided they invoke its benefits and protections though their own due diligence in accordance with the statutory requirements. Those who failed to avail themselves of its benefits now seek to circumvent the statutory requirements and ride the coat-tails of those subcontractors and materialmen who actually asserted their rights. To allow such a result would offend justice. See *Riley Bldg. Supplies, Inc. v. First Citizens Nat. Bank*, 510 So. 2d 506, 508-09 (Miss. 1987) (holding that law governing materialmen's liens is product of enactments of legislature and materialmen hold liens against property only to extent that they have brought themselves within terms of statute); *Frierson Bldg. Supply Co. v. Homestead Sav. & Loan Ass'n.*, 193 So. 2d 421, 423-24 (Miss. 1966) (holding in action to recover for building materials furnished to vendor-builder, it was incumbent upon vendor's materialman to comply with lien statutes, and injustice would arise to simply allow enforcement of lien against innocent purchasers for value who secured loan on property without actual notice of claim which materialman failed to place on record); *Jones Supply Co. v. Ishee*, 249 Miss. 515,

521-22, 163 So. 2d 470, 472-73 (1964) (holding that statutory prerequisites must be strictly complied with to gain statutory benefits and that upon failure to take proper action required by statute as condition precedent to benefits of statute, their remedies are those of common creditors). With this in mind we hold that it would be destructive of the overall purpose of the construction of § 85-7-181 to hold, as the trial court did, that the legislature intended for one notice to serve as right of lien by all potential subcontractors and materialmen who have labored and provided supplies but have not followed the requirements of the same. Accordingly, we reverse and render the decision.

## II.

### WHETHER THE TRIAL COURT ERRED IN AWARDING PRE AND POST-JUDGMENT INTEREST OF FUNDS INTERPLED AND ON DEPOSIT WITH THE COURT CLERK.

¶18. In view of our disposition of the previous issue, the present issue of whether the trial court erred in awarding pre and post-judgment interest on the interpled funds is for naught and now moot.

## III.

### WHETHER THE TRIAL COURT ERRED IN ITS AWARD ATTORNEYS' FEES.

¶19. Amerihost argues that the trial court erred in awarding attorneys' fees to the appellees when, in fact, Amerihost is entitled to an award of attorneys' fees and costs by virtue of its asserted mere-disinterested stake holder status. The trial court's ruling entailed an award of attorneys' fees grounded in law under Miss. Code Ann. § 85-7-181 to "[t]he laborers, subcontractors and persons who furnished materials and established liens," and a denial of an award of attorneys' fees to Amerihost, whom the trial court concluded had "actively opposed the claims presented" and therefore was not a mere-disinterested stake holder. However, both findings, the award of attorneys' fees to the laborers, subcontractors and materialmen and the denial of attorneys' fees to Amerihost, were grounded in erroneous interpretations of § 85-7-181 and therefore is of no substance in this issue. We note, however, that Amerihost's position opposing those claims presented after its May 15, 1995 payment of $272,819.13 to Bromanco was a defensive stance against the claims of those subcontractors and materialmen who sought to avail themselves of the protections of § 85-7-181 by virtue of the single stop notice sent by Wright's Painting Company on April 17, 1995. We held this interpretation to be incorrect.

¶20. An award of attorneys' fees and costs in favor of the party representing interpleader action against the funds interpleaded into the court registry is a discretionary matter lying with the trial court. *See Hartford Acc. & Indem. Co. v. Natchez Inv. Co.*, 161 Miss. 198, 132 So. 535, 539 (1931). The court may not, however, allow attorneys' fees to materialmen and subcontractors for attorneys representing their separate interests. *Id.*; *But see, e.g.* Miss. Code Ann. § 85-7-181 (1972) (statutory provision allowing an award of attorneys' fees to prevailing laborers and materialmen who have initiated suit as a result of an owner's denial of indebtedness). Amerihost argues that it not only instituted the interpleader action, but also interpled into the court registry sufficient amounts to cover those properly exercised claims which were timely submitted under the requirements of § 85-7-181. *See Maryland Casualty Company v. Sauter*, 377 F. Supp. 68, 70 (N.D. Miss. 1974) (holding that a party who has properly brought an interpleader action may be entitled to an award of attorneys' fees); *Perkins State Bank v. Connolly*, 632 F. 2d 1306, 1311 (5th Cir. 1980) (holding that party who initiates an interpleader action and qualifies as a mere disinterested stake holder may be awarded reasonable attorneys' fees); *Cogan v. U.S.*, 659 F. Supp. 353, 354 (S.D. Miss. 1987)

(holding that a mere disinterested stake holder who properly brings an interpleader action may be awarded reasonable attorneys' fees).

¶21. Whether the facts and circumstances surrounding this issue justifies a determination that Amerihost is a mere disinterested stake holder warranting an award of attorneys' fees is a factual finding as yet undecided under a proper interpretation of law that is consistent with this opinion. An award of attorneys' fees would be contingent upon that finding. Therefore, we remand this issue to the lower court for a factual finding as to whether Amerihost's role in the interpleader proceedings arises to that of a mere disinterested stake holder.

### IV.

### WHETHER THE TRIAL COURT ERRED IN FINDING THAT BRUCE COPES ELECTRIC, INC. WAS NOT ENTITLED TO ANY OF THE FUNDS INTERPLED.

¶22. Bruce Copes Electric, Inc. argues that the lower court erred in finding that Copes was not entitled to any of the funds interpled by Amerihost Development, Inc. The lower court concluded that Copes had not proven that it was entitled to any of the interpled funds by virtue of the lack of credible evidence presented by Copes to support a claim against the interpled funds. The lower court held that the credible evidence established that Copes defaulted on its subcontract with Bromanco and failed to complete the project. The lower court further concluded that while Bromanco hired employees of Copes to complete the project, no change orders were executed by anyone authorizing the work Copes asserts was performed nor was any of the work included in the stop notice.

¶23. Having made a detailed review of the record concerning Copes's claim, we hold that the lower court had before it substantial evidence from which to deny Copes's claim and said ruling was not against the overwhelming weight of the credible evidence. This assignment of error is without merit.

### CONCLUSION

¶24. We reverse and render on the assignment of error raised in Issue I. It was error to hold that the notice of claim by one subcontractor inures to the benefits of those subcontractors and materialmen who had not complied with the notice requirements of § 85-7-181 and provided notice unaided by the diligence of others. Consequently, the additional $272,813.83 ordered deposited into the registry of the circuit court for the $272,813.83 remitted on May 15, 1995 to Bromanco and prior to any additional stop payment notices was error. We reverse and render on the assignment of error raised in Issue II regarding an award of pre and post-judgment interest. We reverse and remand on the assignment raised in Issue III for additional findings on the issue of whether Amerihost meets the requirements of a mere disinterested stake holder. The only fund from which the claimants may lay claim, is the $90,485.59 originally interpled into the registry of the court by Amerihost on November 15, 1995. With respect to the claim asserted by Southern Electric Supply Co., we affirm the trial court's conclusion of law contained in part E of its findings of fact and conclusions of law entered on February 13, 1998. Additionally, given the findings and conclusions reached in part E with respect to Southern's status as a supplier of the general contractor by virtue of the Joint Payment Agreement of February 8, 1995, we hold that the letter sent by Southern Electric Supply Co. on May 4, 1995 to Amerihost qualifies as a stop payment notice affording them the benefits of § 85-7-181 but limited to claims on materials supplied after February 8, 1995. We affirm the trial court's findings with respect to Copes Electric and its decision denying Copes Electric their asserted claim.

**¶25. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART AND AFFIRMED IN PART FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED EQUALLY AMONG THE PARTIES.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, AND PAYNE, JJ., CONCUR. LEE AND MOORE, JJ., NOT PARTICIPATING.**