LEE, P.J.,
 

 for the Court.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 1. W.D. Russum planned to build a Wee Care Child Care Center (Wee Care) in Byram, Mississippi, and selected Am-South Bank to finance the project. Rus-sum and AmSouth entered into a loan agreement in which Russum agreed to repay the funds loaned for the project and grant AmSouth the project’s deed of trust. Russum then chose United Plumbing
 
 &
 
 Heating Company, Inc. (United) to serve as the project’s general contractor. Rus-
 
 *345
 
 sum and United subsequently entered into agreements that acknowledged AmSouth’s limited role as lender in the project and specified AmSouth would have no liability for Russum’s payment or performance associated with the project. The two parties also agreed that AmSouth’s duties were strictly limited to those outlined in the loan agreement between AmSouth and Russum.
 

 ¶ 2. In 2003, United employed several subcontractors to perform various tasks during the building process. As progress was made, United asked Russum to release funds borrowed from AmSouth through pay applications. AmSouth hired FAS, a construction management company, to oversee the pay applications on the project. United and Russum also executed an agreement consenting to FAS’s role. Wee Care then filed for bankruptcy, and the contractors went unpaid. United, Price’s Glass & Mirror Co., Inc.; James Thomas d/b/a T’s Tile; Carr Plumbing Supply, Inc.; Ricky Jackson d/b/a Jackson Sheet Metal and Construction; Tommy Meadows d/b/a F & M Construction; Precision Ceiling, LLC; and Ronnie DeForest (collectively referred to as United) subsequently filed suit against Russum, Wee Care, AmSouth, and FAS in the Circuit Court of Hinds County asserting various claims including breach of contract, negligence, stop-notice violation, fraud, and quantum meruit.
 

 ¶ 3. AmSouth filed a motion for summary judgment, which was granted by the trial court. United now appeals the summary judgment and asserts that the trial court erred in (1) reading Mississippi Code Annotated section 31-3-15 (Rev.2008) to require the construction contract to be null and void, (2) finding that no claims for breach of contract could be maintained against AmSouth, and (3) granting summary judgment in favor of AmSouth.
 

 STANDARD OF REVIEW
 

 ¶ 4. In reviewing a lower court’s grant of summary judgment, this Court employs a de novo standard of review.
 
 Anglado v. Leaf River Forest Prods., Inc.,
 
 716 So.2d 543, 547(¶ 13) (Miss.1998). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” M.R.C.P. 56(c). This Court will consider all of the evidence before the lower court in the light most favorable to the non-moving party.
 
 Palmer v. Anderson Infirmary Benevolent Ass’n,
 
 656 So.2d 790, 794 (Miss.1995).
 

 ¶ 5. The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). The entry of summary judgment is mandated if the non-movant “fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Galloway v. Travelers Ins. Co.,
 
 515 So.2d 678, 683 (Miss.1987) (citation omitted).
 

 DISCUSSION
 

 I. INTERPRETATION OF MISSISSIPPI CODE ANNOTATED SECTION 31-3-15
 

 ¶ 6. In its first issue on appeal, United argues that the trial court incorrectly found that the construction contract entered into between Wee Care and United was null and void under Mississippi Code
 
 *346
 
 Annotated section 31-3-15. Section 31-3-15 states:
 

 No contract for public or private projects shall be issued or awarded to any contractor who did not have a current certifícate of responsibility issued by said board at the time of the submission of the bid.... Any contract issued or awarded in violation of this section shall be null and void.
 

 ¶ 7. The trial court found that even though United held a current certifícate of responsibility, it was not the appropriate certificate for the work United contracted to perform. The trial court stated in its findings:
 

 There are no regulations, minutes, or orders promulgated by the Board that interpret whether or not “certificate of responsibility” in § 31-3-15 means any certificate or the specific certificate necessary to work on a particular project. However, the Court believes that the rules, orders, and minutes of the Board implicitly accept this Court’s interpretation that § 31-3-15 is designed to enforce the overall purpose of the Act. Thus, ... the Court interprets § 31-3-15 to mean that a contractor must have a specific certificate of responsibility to prevent the contract being null and void.
 

 United argues that the language of the statute simply refers to “a current certificate of responsibility” and does not require any certain classification. Thus, United asserts that since it held a current certificate of responsibility issued by the State Board of Contractors of the State of Mississippi (Board), regardless of which classification, the contract with Wee Care was valid.
 

 ¶ 8. Despite not specifying if a specific certificate of responsibility is required by statute, the Board is given the power by this section of the code “[t]o adopt rules and regulations setting forth the requirements for certificates of responsibility, the revocation or suspension thereof, and all other matters concerning same....” Miss. Code Ann. § 31 — 3—13(f). The duty of the Board is to “conduct an objective, standardized examination of an applicant for a certificate to ascertain the ability of the applicant to make practical application of his knowledge of the profession or business of construction in the category or categories for which he has applied for a certificate of responsibility.” Miss.Code Ann. § 31-3-13(a). The Board has “the power and responsibility to classify the kind or kinds of works or projects that a contractor is qualified and entitled to perform under the certificate of responsibility issued to him. Such classification shall be specified in the certificate of responsibility.” Miss.Code Ann. § 31-3-13(g). Finally, Mississippi Code Annotated section 31-3-21(1) (Rev.2008) states, “It shall be unlawful for any person who does not hold a certificate of responsibility issued under this chapter ... to submit a bid, enter into a contract, or otherwise engage in or continue in this state in the business of a contractor, as defined in this chapter.”
 

 ¶ 9. According to the Rules and Regulations of the State Board of Contractors, the Board has seven major classifications of work from which an applicant for a certificate of responsibility must choose: building construction; highway, street, and bridge construction; heavy construction; municipal and public works construction; electrical work; mechanical work; and specialty work. State Board of Contractors Rule 2(b). According to Rule 2(a) of the Rules and Regulations of the State Board of Contractors, an applicant for a certificate of responsibility “will not be classified or permitted to bid on or perform a type or types of work not included in his request.” The Rules go on to state the penalty for bidding on a project out
 
 *347
 
 side of the applied for classification as follows:
 

 In any case in which a holder of a Certificate of Responsibility has bid outside the classification contained in his, her or its Certificate of Responsibility, the Executive Secretary of the State Board of Contractors shall notify each holder to appear before the Board at its next regular meeting and show cause, if possible, why the holder’s Certificate of Responsibility shall not be suspended.
 

 State Board of Contractors Rule 5.
 

 ¶ 10. Norman Brooks, executive secretary of the Board, testified by affidavit that he reviewed the Board’s records for the legal classifications of United and found that it held the following specialty classifications: asbestos abatement or removal; heat, air conditioning, and ventilation; plumbing; and renovations. Brooks testified that an entity contracting to do work as a construction manager must have a certificate of responsibility in construction management or the major classification of building construction.
 
 See
 
 State Board of Contractors Rule 19. An exception is made to the specific classification requirement when the project is a private project totaling less than $100,000. Miss. Code Ann. § 31 — 3—1(b) (Rev.2008). An exception is also made when at least fifty percent of the total cost of the project is for work within the particular specialty classification held. State Board of Contractors Rule 4. According to Brooks, since United did not have a certificate of responsibility in either classification and no exception was claimed, United was not licensed to do work as a prime contractor, subcontractor, or sub-subcontractor as a construction manager.
 

 ¶ 11. We find that the contract entered into between United and Wee Care was null and void because United failed to possess the appropriate certificate of responsibility for the type of work it undertook to perform. Having found that United’s contract with Wee Care was void, it follows that any contractual obligations AmSouth may have owed the subcontractors are also void. Therefore, we find that this issue is without merit.
 

 II. BREACH OF CONTRACT
 

 ¶ 12. In its second issue on appeal, United argues that the trial court erred in finding no claims for breach of contract against AmSouth. In order to establish a breach of contract claim, United bore the burden of proving: (1) the existence of a valid and binding contract between it and AmSouth, (2) that AmSouth breached the contract to which it was a party, and (3) that United was damaged monetarily.
 
 Suddith v. Univ. of S. Miss.,
 
 977 So.2d 1158, 1175(¶ 35) (Miss.Ct.App.2007). United claims it entered into a valid contract with AmSouth through the “Subordination Agreement” as well as other agreements that granted AmSouth broad project powers and various project duties.
 

 ¶ 13. Questions concerning the construction of a contract are questions of law to be reviewed by the trial court.
 
 Miss. State Highway Comm’n v. Patterson Enters. Ltd.,
 
 627 So.2d 261, 263 (Miss.1993). Here, the trial court found that no contractual relationship was formed between the parties. The trial court further concluded that AmSouth failed to enter into any relationship with United which would hold AmSouth liable for damages. The trial judge stated, “The relationships of the parties to this action are clear: the subcontractors contracted with United, who contracted with the Owner. Am-South’s contracts regarding its loan were with the Owner, not with the plaintiffs ... without any privity of contract with Am-South, [the] plaintiffs cannot establish a claim for breach of contract.”
 

 
 *348
 
 ¶ 14. We find that AmSouth possessed no contractual relationship with United. Therefore, we find it unnecessary to address the other contractual arguments pertaining to breach found in United’s brief. Thus, this issue is without merit.
 

 III. SUMMARY JUDGMENT
 

 ¶ 15. In its third issue on appeal, United argues that the trial court erred in granting AmSouth’s motion for summai'y judgment because it has a valid negligence claim. United argues that AmSouth had a duty to protect it from an unreasonable risk of damage and that AmSouth breached that duty which ultimately caused it damage. United attempts to bolster this argument by claiming that AmSouth failed to investigate why Russum asked Am-South to withhold payments designated for United or to follow AmSouth’s own dispute resolution policies. United also claims the proper standard of care owed to them by AmSouth was that of “reasonable diligence.”
 

 ¶ 16. We disagree with United’s argument and hold its negligence claim invalid as a matter of law. We find no contract, statute, or law that would establish that AmSouth had a duty to (1) pay money to a party it was not obligated to pay; (2) investigate or contradict a valid request made by its client, Russum; or (3) adhere to its own dispute resolution policies when United was neither a client nor a party to any valid contract involving Am-South. As to United’s reasonable-diligence argument, the supreme court held in
 
 Riley Building Supplies, Inc. v. First Citizens National Bank,
 
 510 So.2d 506, 509 (Miss.1987), that a reasonable-diligence duty only applied to lien-priority disputes and did not create a common-law duty between banks and contractors. Therefore, absent an owed duty in a negligence claim, United’s tort claim is without merit.
 

 ¶ 17. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR. CARLTON AND MAXWELL, JJ., NOT PARTICIPATING.