BARNES, J.,
 

 for the Court:
 

 ¶ 1. Cooper P. “Pete” Misskelley is the former warden of the Carroll County/Montgomery County Correctional Facility. When Misskelley became physically disabled and unable to perform his duties as warden, he requested his accrued catastrophic leave, a benefit granted by language contained in the correctional facility’s personnel policy handbook. His accrued leave totaled 275 days.
 
 [1]
 
 However, the Board of Supervisors of Carroll County (the Board) approved only fifty-two days of catastrophic leave; the remaining 223 days were considered “creditable service” to his retirement plan since the Board considered Misskelley terminated from employment as of December 31, 2007. Misskelley filed a complaint against Carroll County and the Carroll County/Montgomery County Regional Correctional Facility (hereinafter referred to collectively as Carroll County), claiming that he should have received the remaining 223 days of accrued leave. Carroll County responded with a motion to dismiss and/ or, alternatively, a motion for summary
 
 *212
 
 judgment.
 
 [2]
 
 The Circuit Court of Carroll County granted the motion, dismissing Mis Shelley’s claim with prejudice, and Misskelley now appeals. We affirm the circuit court’s judgment, finding that there was no genuine issue of material fact but that the Board correctly interpreted the personnel policy and that Misskelley was not entitled to the remaining catastrophic leave.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Misskelley entered into a written employment contract with Carroll County on January 20, 2004, to become the warden for the County’s recently constructed correctional facility. The initial term of the contract was for a period of one year beginning on January 1, 2004. The contract was to renew automatically on a yearly basis unless either party submitted a notice of termination sixty days prior the termination date of the contract or renewal. The contract also stated that Misskel-lejfs employment could be terminated “for reasonable cause” or “failure or refusal to adequately perform the duties” as warden.
 

 ¶ 3. Misskelley was also bound by Carroll County’s personnel policy handbook, which covered all correctional facility employees. The handbook had a clause that provided for catastrophic leave. The clause stated:
 

 The Facility shall allow thirty (80) days per year (20 hours per month) for catastrophic injury or illness for employees and appointed officials. A catastrophic injury or illness means a severe condition or combination of conditions affecting the mental or physical health of an employee or member of an employee’s immediate family that requires the services of a licensed physician for an extended period of time and that forces the employee to exhaust all personal and sick leave that cannot be carried over into the next calendar year.
 
 Unused catastrophic leave shall be earned over into subsequent calendar years and any unused leave shall be counted as creditable service for the purposes of the retirement system upon termination of employment.
 
 Catastrophic leave can
 
 only be used by employees
 
 or appointed officials
 
 upon approval of the Sheriff of Carroll County and the Board of Supervisors of Carroll County.
 
 Catastrophic leave shall be retroactive to all current covered employees in the retirement system beginning at their date of employment with Carroll County.
 

 (Emphasis added).
 

 ¶ 4. On April 24, 2007, Carroll County Sheriff Donald Gray wrote a letter to the Carroll County Chancery Clerk, stating that, effective April 22, 2007, Misskelley had resigned from his position as warden. According to Misskelley, the letter stemmed from his refusal to work with an insubordinate employee; however, he denies that he resigned. The following day, Sheriff Gray approved a final paycheck for Misskelley, totaling $14,800.80, which included his salary through April 30, 2007, and compensation for twenty-four days of unused vacation time and 193 hours of compensatory time. Due to Misskelley’s departure, two other employees resigned. On May 4, 2007, Sheriff Gray wrote a second letter to the chancery clerk inform
 
 *213
 
 ing him that Misskelley would be resuming his duties as warden, and the period between April 30, 2007, and May 7, 2007, would be considered an unpaid leave of absence. Misskelley never entered into a new written employment contract with Carroll County.
 

 ¶ 5. On November 5, 2007, Sheriff Gray submitted a letter to the Board requesting that catastrophic leave be granted for Misskelley. Attached to this request was a letter by Dr. Susan Neely, dated October 26, 2007, which stated that Misskelley suffered from severe arthritis and was unable to perform his duties as warden. She further recommended that a knee and hip replacement were necessary before Missk-elley could resume his duties. That same day, the Board met and unanimously approved Sheriff Gray’s request to pay Misskelley for his unused catastrophic leave, “pending determination of ending date.”
 

 ¶ 6. The following day, a new sheriff for Carroll County, Jerry Carver, was elected. Carver immediately hired a new warden for the correctional facility. On November 16, 2007, the Board approved catastrophic leave for Misskelley for the period of November 9, 2007, to December 31, 2007,
 
 “pending termination date.”
 
 (Emphasis added). Thus, Misskelley was paid for fifty-two days of his catastrophic leave. His remaining leave of 223 days was certified by the Board and submitted to the state’s Public Employment Retirement System (PERS) for consideration as “creditable service” under the terms of the personnel handbook policy. Misskelley, aggrieved by this result, appeared at the next Board meeting and stated that he was entitled to the entire 275 days of catastrophic leave; however, the record does not reflect that the Board took any further action regarding this matter. At the January 8, 2008, meeting, the Board approved the employment contract for the new warden.
 

 ¶ 7. On January 29, 2008, Misskelley filed a notice of claim and intention to file suit in accordance with Mississippi Code Annotated section 11-46-11 (Rev.2002) of the Mississippi Tort Claims Act (MTCA). Then, on June 18, 2008, Misskelley filed a complaint with the Carroll County Circuit Court, alleging that the Board’s failure to pay him for all of his accrued catastrophic leave “was unlawful, malicious, arbitrary, and in direct violation of Carroll County’s written personnel policy, and in violation of [Misskelley’s] contract of employment.” On January 14, 2009, Carroll County filed a motion to dismiss and/or, alternatively, a motion for summary judgment. Its position was that Misskelley’s claim was barred because: he failed to exhaust his administrative remedies and file a bill of exceptions pursuant to Mississippi Code Annotated section 11-51-75 (Rev.2002); his employment contract had terminated, making him an “at-will” employee; and the Board’s actions were in compliance with the catastrophic leave clause contained in the personnel policy handbook.
 

 ¶ 8. On May 29, 2009, the circuit court granted Carroll County’s motion for summary judgment. In its order, the circuit court stated that since Misskelley’s claim was a breach-of-contract claim under the MTCA, no bill of exceptions was necessary. The circuit court further found that Misskelley was not employed after December 31, 2007, and that the status of Missk-elley’s employment, whether contractual or at-will, was irrelevant as it pertained to the application of the catastrophic leave clause contained in the handbook. Finally, the circuit court held that the Board did not breach Misskelley’s contract and that the Board had followed Carroll County’s personnel policy in awarding the accrued catastrophic leave appropriately. The circuit
 
 *214
 
 court’s judgment was entered on June 25, 2009, dismissing Misskelley’s claim with prejudice, and Misskelley now appeals. Finding that no genuine issue of material fact exists that the Board properly interpreted the catastrophic leave policy, we affirm the circuit court’s grant of summary judgment.
 

 STANDARD OF REVIEW
 

 ¶ 9. If a circuit court determines from “the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits,” that no genuine issue of material facts exists and that the movant is “entitled to judgment as a matter of law[,]” then a motion for summary judgment may be granted.
 
 United Plumbing & Heating Co., Inc. v. AmSouth Bank,
 
 30 So.3d 343, 345 (¶ 4) (Miss.Ct.App.2009) (citing M.R.C.P. 56(c)). The movant has the burden to show that “no genuine issue of material fact[ ] exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.”
 
 Howard v. City of Biloxi,
 
 943 So.2d 751, 754 (¶ 4) (Miss.Ct.App.2006). This Court conducts a de novo review of a circuit court’s grant or denial of summary judgment.
 
 Duckworth v. Warren,
 
 10 So.3d 433, 440 (¶ 22) (Miss.Ct.App.2009) (citing
 
 Moss v. Batesville Casket Co.,
 
 935 So.2d 393, 398 (¶ 15) (Miss.2006)).
 

 I. Whether the circuit court erred in determining that Misskelley’s employment status was not relevant to his claim.
 

 ¶ 10. Misskelley submits that the resolution of the issue of his employment status was outcome determinative and should have been addressed by the circuit court. Admittedly, we find that there is a dispute of fact as to whether Misskelley resigned in April 2007; however, it is not a material issue pertinent to Misskelley’s actual substantive claim. Thus, we agree with the circuit court’s finding that the question of whether Misskelley had actually resigned in April 2007, making him an at-will employee, or whether he retained his status as a contract employee, was not relevant to the issue of whether he was entitled to payment for his accrued catastrophic leave.
 

 ¶ 11. The handbook was applicable to all employees of the correctional facility, whether their status was contractual or at-will. Misskelley, in his response to Carroll County’s motion for summary judgment, admitted as much, stating that “the issue of whether or not [he] was a contracted employee .... has no relevance to [his] claim that the County violated the terms of its catastrophic leave policy.” At the motion on the hearing for summary judgment, counsel for Misskelley, Webb Franklin, also agreed with the circuit court on this point, as follows:
 

 BY THE COURT: Yeah, [Misskelley] is governed by the handbook. That is the point I’m trying to make. It doesn’t matter what his contract says. It’s, not, the terms of the contract are not at issue. It’s the terms of the handbook that are at issue. Isn’t that right?
 

 BY MR. FRANKLIN: You are right. You are correct.
 

 [[Image here]]
 

 BY THE COURT: .... If to be hired in the first place, the Sheriff hired him, and he had to do so with the approval of the Board, then there may be some questions about whether or not this resignation letter was, in fact, a resignation letter or whether he was just placed on — then you get into a question of whether he claimed his back benefits during the time he was off and all like that. You have got some factual issues and things to determine
 
 *215
 
 there, but does it have anything to do with what I have got to determine here today in y’all’s motion?
 

 BY MR. FRANKLIN: No, Your Honor. So we would certainly admit that he would have to take a credit against what he got paid for his sick leave. I mean obviously. We don’t deny that. We don’t dispute that argument.
 

 BY THE COURT: Well, it also goes into ... if a determination is going to be made as to how he was employed, whether he was a contract employee or at will employment, that fact that he took those benefits at that time might have some relevance to that. But /all are not asking me to decide that[.]
 

 BY MR. FRANKLIN: No.
 

 Misskelley stated in his response to the motion for summary judgment, as well as at the hearing, that the issue of employment status would only be relevant as it pertains to the issue of attorney’s fees, if he succeeds on the breach-of-contract claim. Therefore, this issue was waived by Misskelley and is also without merit.
 

 II. Whether the circuit court erred in finding that Carroll County did not breach Misskelley’s employment contract.
 

 ¶ 12. Misskelley contends that Carroll County’s failure to keep him in catastrophic-leave status and compensate him for the accrued 223 days constituted a breach of his employment contract as the personnel handbook was a part of his employment contract. However, the circuit court found that there was no breach of Misskelley’s employment contract.
 

 ¶ 13. The Mississippi Supreme Court has held that an employee policy manual “can create contractual obligations, even in the absence of a written agreement.”
 
 Perry v. Sears, Roebuck & Co.,
 
 508 So.2d 1086, 1088 (Miss.1987). Furthermore, “a written contract can be modified by a policy handbook which then becomes part of the contract,
 
 but only where the contract expressly provides that it will be performed in accordance with the policies, rules and regulations of the employer.” Id.
 
 (citing
 
 Robinson v. Bd. of Trs. of E. Cent. Junior Coll.,
 
 477 So.2d 1352, 1353 (Miss.1985)) (emphasis added). It is undisputed that Misskelley was bound by the terms of the personnel handbook.
 

 ¶ 14. In his original complaint, Misskel-ley contended that he should have remained employed and received his regular pay and benefits “until his leave status ha[d] expired.” He also requested reimbursement for private insurance that he was forced to obtain, damages for loss of retirement credit during the 223 days he was not on leave, damages for mental suffering and emotional distress, punitive damages, and attorney’s fees. Thus, Misskelley argues, in effect, that once he was placed on catastrophic leave, he was guaranteed employment through his accrued 275 days.
 

 ¶ 15. We cannot accept Misskelley’s interpretation as there is nothing in the handbook or Misskelley’s contract to support this claim. Misskelley has even confessed to this Court that “the case at bar is not a termination of employment case.” Misskelley’s counsel also admitted to the circuit court that he was no longer under the contract.
 

 BY THE COURT: Okay. He is still under contract then under your interpretation, isn’t he?
 

 BY MR. FRANKLIN: Well, no, sir. He is not because he is unable to perform his job. He has earned his catastrophic leave, and it has now expired, but he hasn’t been paid for it.
 

 
 *216
 
 ¶ 16. Moreovei’, Misskelley’s employment contract makes no mention of the employee handbook and its policies. Therefore, although the handbook’s catastrophic leave policy was legally binding between the County and Misskelley, the policy had no legal effect on Misskelley’s written employment contract. Misskelley admitted this fact at the hearing on the motion for summary judgment:
 

 [BY MR. FRANKLIN]: All right. Now if I might, Mr. Misskelley, even if the Court should find that your contract, your written contract was [vitiated], under that portion of the policy, it wouldn’t really make any difference, would it?
 

 [BY MR. MISSKELLEY]: I wouldn’t think so; no, sir.
 

 [BY MR. FRANKLIN]: Why?
 

 [BY MR. MISSKELLEY]: Because the personnel policy covered everybody including me.
 

 After further discussion, counsel for Misskelley reiterated, as follows:
 

 BY THE COURT: Yeah, he is governed by the handbook. That is the point I’m trying to make. It doesn’t matter what his contract says. It’s, not, the terms of the contract are not at issue. It’s the terms of the handbook that are at issue. Isn’t that right?
 

 BY MR. FRANKLIN: You are right. You are correct.
 

 ¶ 17. Therefore, we find no error in the circuit court’s finding that the Board did not breach Misskelley’s employment contract in not awarding Misskelley his 223 days of accrued catastrophic leave.
 

 III. Whether Misskelley’s employment was terminated by Carroll County.
 

 ¶ 18. Misskelley claims that his employment with Carroll County was never officially terminated as he was neither informed by the Board or Carroll County that he was terminated nor that he would not receive his entire 275 days of catastrophic leave. We find this assertion without merit. The circuit court found that Misskelley had notice of his termination based upon the fact that he appeared before the Board prior to December 31, 2007, to contest the Board’s termination of his leave status. The Board, on November 16, 2007, approved only fifty-two days of leave for Misskel-ley, pending termination date. The record supports the circuit court’s finding that Misskelley was aware of this decision by the Board, considering that he appeared before the Board at its next meeting to challenge its decision. As already noted, Misskelley’s counsel stated at the summary-judgment hearing that Misskel-ley was not under the written contract as he is still disabled and unable to perform his duties as warden — a fact that Misskel-ley also confirmed in his testimony. As the circuit court observed in its order, this violates Section Five of Misskelley’s employment contract, which states that the contract shall terminate upon the “[wjarden’s failure or refusal to adequately perform the duties of his employment.” Furthermore, Misskelley knew that a new warden had been hired, and he made no claim for salary after December 31, 2007.
 

 ¶ 19. Accordingly, we find nothing in the record to support that Misskelley was still employed by Carroll County after December 31, 2007.
 

 IV. Whether the circuit court erred in its interpretation of the catastrophic-leave clause of Carroll County’s personnel policy.
 

 ¶ 20. The catastrophic-leave clause in the personnel policy handbook provided that, upon an employee’s termination, “any
 
 *217
 
 unused leave shall be counted as creditable service for the purposes of the retirement system[.]” Misskelley argues that this provision was meant for those employees who had not utilized their catastrophic leave due to illness or injury. Thus, he claims that since he was placed on leave prior to termination, he should have remained on leave for the remaining 223 days. In other words, he claims that his right to his accrued catastrophic leave had “vested.”
 

 ¶ 21. A vested right is “[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person’s consent.” Black’s Law Dictionary 1438 (9th ed.2009). The personnel policy handbook clearly states that: “Catastrophic leave can only be used by employees or appointed officials
 
 upon approval
 
 of the Sheriff of Carroll County and the Board of Supervisors of Carroll County.” (Emphasis added). This language indicates that an employee’s use of his accrued catastrophic leave is not a vested right; rather, it is a benefit conferred by the Board and Sheriff on a discretionary basis. Further, there is nothing in the handbook that states the Board is required to approve the entire amount of leave accrued by an employee. The handbook clearly states that any leave not used by termination date was to be deemed “creditable service,” and the Board adhered to this policy.
 

 ¶ 22. Thus, we find no error in the circuit court’s interpretation of the catastrophic leave policy. As no genuine issue of material fact exists to show that the Board’s actions interpreting the policy were in error, we affirm the circuit court’s grant of summary judgment in favor of Carroll County.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF CARROLL COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ, CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . This figure is the time accrued from Missk-elley’s original date of hire by Carroll County in April 1999.
 

 [2]
 

 . The Mississippi Department of Corrections (MDOC) was also listed as a defendant in the original complaint, but Misskelley later conceded that he had no cause of action against the MDOC. As such, the circuit court submitted an order and final judgment on April 21, 2009, dismissing all claims against the MDOC; therefore, it is not a party to this appeal.